# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| TERENCE K. BETHEA, | : | |
| | : | |
| Petitioner, | : | Civil Action No.: 04-2269 (RMU) |
| | : | |
| | : | Document No.:   1 |
| v. | : | |
| | : | |
| BUREAU OF PRISONS, *et al.*, | : | |
| | : | |
| Respondents. | : | |
| | : | |

## MEMORANDUM OPINION

### DENYING THE PETITIONER'S APPLICATION FOR A WRIT OF *HABEAS CORPUS*

## I.  INTRODUCTION

Before the court is the *pro se* petitioner's application for a writ of *habeas corpus* brought

pursuant to 28 U.S.C. § 2241.  The petitioner claims that he is in custody on an expired sentence.

He also challenges the United States Parole Commission's parole revocation decision.  Because

the parole commission's decision was adequately supported and because its sentencing

calculation is correct, the court denies the petitioner's application for a writ of *habeas corpus*.

## II.  BACKGROUND

In January 1994, the petitioner was convicted following a guilty plea of attempted

possession of cocaine and sentenced by the Superior Court of the District of Columbia to seven

to twenty-one years of imprisonment.  Gov't. Opp'n at 2.  The court suspended execution of the

sentence and placed the petitioner on two years of supervised probation.  *Id*. at 3.   In accordance

with the conditions of his probation to complete a drug treatment program, the petitioner spent

eleven months at Second Genesis in the District of Columbia.  Pet'r's Reply at 9.  When he failed

to complete the program, the petitioner was arrested for violating the terms of his probation.  The superior court revoked the petitioner's probation on May 11, 1995, and sentenced him on June 6, 1995, to three to nine years of imprisonment.  Gov't. Opp'n at 3.

The petitioner was incarcerated for approximately eighteen months, was released to parole on January 8, 1997, and was to remain under parole supervision until July 18, 2003.  *Id.* In August 1998, the petitioner was arrested and charged under Maryland law with sexual assault for an alleged incident in July 1998.  *Id.*  As a result of this arrest, the then-D.C. Board of Parole issued an arrest warrant on September 28, 1998, which was executed on April 19, 1999.[1]  *Id.* The Board  revoked the petitioner's parole on December 13, 1999.  *Id.*  It rescinded the so-called street-time credit petitioner earned while on parole from the D.C. sentence and eventually calculated the petitioner's full-term date of release as April 4, 2005.[2]  *Id.* at 3, 6.

In May 2000, the Commission conducted a parole reconsideration hearing, which focused mainly on the July 1998 incident.  Gov't. Opp'n at 3- 4.  The petitioner denied all of the criminal allegations.  The Commission determined that it had insufficient evidence to resolve the issue and, in light of new evidence about the incident, rescheduled the hearing.  *Id.* at 4.  The rehearing occurred on March 13, 2001.  The petitioner presented evidence that the sexual assault charge

[1]     Effective August 5, 1998, the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act") abolished the D.C. Board of Parole and transferred parole responsibility for District of Columbia prisoners to the United States Parole Commission.  *See*  D.C. Code § 24-131 (2001); *Franklin v. District of Columbia*, 163 F.3d 625, 632-33 (D.C. Cir. 1998).  The final transfer of authority occurred on August 5, 2000.

[2]     Originally, the Commission calculated the full-term date as October 25, 2005, but subsequently credited the petitioner's D.C. sentence with 203 days he had served in Maryland's custody.  *See* Gov't. Opp'n at 6, n.4.

had been vacated and dismissed in January 2001.[3]  *Id*. at 5.  Based on medical records, the victim's and petitioner's statements, and the prosecutor's notes and police reports, the Commission determined that while the evidence did not support a sexual assault, it did support a finding of "theft of property with the victim detained by being tied up."  Gov't. Ex. I at 6.  It therefore rated the petitioner's behavior as category six severity and continued petitioner's incarceration until the expiration of his sentence.  Gov't. Opp'n at 5.

The petitioner was paroled on November 22, 2002, his mandatory release date.  *Id*. at 6. His parole certificate set the full-term date as April 4, 2005, but stated that the petitioner had 499 days remaining on his sentence as of November 22, 2002.  Gov't. Ex. L.  Based on the latter statement, the full-term date would have been one year earlier, on April 4, 2004.  Meanwhile, on September 20, 2004, the Commission issued a warrant for the petitioner's arrest based on criminal and non-criminal parole violations.  Gov't. Opp'n at 7.  The warrant stated that the petitioner had been released in November 2002 with "864 days remaining to be served."  Gov't. Opp'n at 7.

The petitioner initiated this action on December 30, 2004, two days after his approximated time for release from his detention at the District of Columbia Jail on unrelated charges.  Pet. at 1.  The Commission's warrant was executed on January 5, 2005, and the petitioner was recommitted to the District of Columbia Jail.  Gov't. Opp'n at 7.  Following a hearing on January 7, 2005, the Commission found probable cause to detain the petitioner and

---

[3]       In February 2002, a Maryland court requested that the Bureau of Prisons and the Commission expunge all records pertaining to the 1998 incident.  Gov't. Opp'n at 5-6. The Commission denied the request on the bases that the records were now Commission records and were "relied upon [] in making its parole decision in this case."  Gov't. Ex. K.

scheduled a parole revocation hearing on March 2, 2005. *Id*. at 7.

## III. ANALYSIS

### A. The Petitioner Properly Brought this Case under 28 U.S.C. § 2241

As an initial matter, the respondents assert that the petitioner should have proceeded under 28 U.S.C. § 2254. Gov't. Opp'n (citing *Madley v. United States Parole Commission*, 278 F.3d 1306 (D.C. Cir. 2002)). This court has jurisdiction to entertain this petitioner's application for a writ of *habeas corpus* under 28 U.S.C. § 2241. *See Blair-Bey v. Quick*, 151 F.3d 1036, 1046 (D.C. Cir. 1998) (stating that "because Congress did not explicitly remove our jurisdiction over those section 2241 actions that do not attack the petitioner's conviction or sentence, that jurisdiction necessarily continues in effect."); *Ash v. Reilly*, 354 F. Supp.2d 1, 4 (D.D.C. 2004) (stating that "the government's reliance on *Madley* for this broad assertion is incorrect"). The respondents also claim correctly that the petitioner has named improper respondents inasmuch as the writ of *habeas corpus* is properly directed to the immediate custodian. *See* 28 U.S.C. § 2243; *Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998) (noting 'at the outset" that the proper "defendant" to a habeas claim is the petitioner's warden). The court substitutes the warden of the District of Columbia Jail as the proper respondent.[4]

The writ of *habeas corpus* may extend to a District of Columbia prisoner when it is shown that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner claims that the respondents violated his due process rights during parole revocation proceedings and in the calculation of his sentence.

---

[4]   For ease of case administration, the case caption will remain unchanged.

**B.    The Commission's Parole Decision was Adequately Supported**

In the context of a parole revocation hearing, a parolee has a Fifth Amendment liberty interest in maintaining his "conditional" freedom and therefore is entitled to due process.  *See Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C. Cir. 1996) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)).  That entitlement, however, is limited to notice and an opportunity to be heard in a reasonably timely manner.  *See id.* at 1421-24 (discussing *Morrissey* standards).  The petitioner does not allege that he was denied a meaningful hearing.  Rather, he disputes the Commission's reliance on certain evidence and its credibility findings.  As a general rule, "[t]he courts are without power to grant [] parole or to judicially determine eligibility for parole.  Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the Board in making its determinations."  *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 944 (2d Cir. 1979) (quoting *Brest v. Ciccone*, 371 F.2d 981, 982-83 (8th Cir. 1967)).  Absent a constitutional violation, this court is not authorized under section 2241 to disturb the Commission's parole decisions.  *See, e.g., Alamo v. Clay*, 137 F.3d 1366, 1368 (D.C. Cir. 1998) (citing *Billiteri v. U.S. Bd. of Parole*, 541 F.2d at 944).

A due process violation may occur in the absence of an identifiable liberty interest when it is shown that the paroling authority's decision was "exceptionally arbitrary."  *Blair-Bey,* 151 F.3d at 1048, n.11.  "[I] n evaluating whether there is sufficient evidence to support a parole revocation, the [District of Columbia Circuit] has examined whether the decision was 'either totally lacking in evidentiary support or [] so irrational as to be fundamentally unfair.'"  *Crawford v. Jackson*, 323 F.3d 123, 129 (D.C. Cir. 2003).  The hearing examiner found the evidence insufficient "to hold [the petitioner] accountable for the alleged criminal conduct," and

noted that "the authority and . . . local courts . . . failed to proceed with this case other than the simple assault charge which has now apparently been dismissed." Gov't Ex. I at 3. The executive hearing examiner disagreed and found sufficient support from the victim's statement, the "timely" police report, the petitioner's "pawn[ing] the TV set," and a transcript of the petitioner's post-conviction proceeding that the petitioner had committed "category six behavior [] [t]heft of property with the victim detained by being tied up." *Id.* at 5-6. The Court has no authority to second-guess the Commission's acceptance of the executive hearing examiner's findings over those of the hearing examiner. Moreover, the fact that the Maryland court subsequently expunged the underlying criminal offense does not itself "undermine the reliability" of the evidence supporting the decision. *Crawford v. Jackson*, 323 F.3d at 131. Because the findings supporting the ultimate decision were adequately supported, the Court has no basis to conclude that the decision was so arbitrary as to have deprived the petitioner of due process.

### C. The Petitioner Fails to Demonstrate that his Sentence Calculation is Incorrect

The petitioner claims that the discrepancy between the full-term date of April 5, 2005, and the "499 days remaining to be served" appearing on his parole certificate entitles him to a full-term date of April 4, 2004. Pet. at 4-5. The respondent has provided evidence, however, that the 499-day figure was a clerical error that should have been recorded as 864 days. Gov't. Opp'n, Ex. M, Declaration of Ronald W. Riker at 2. Mr. Riker documents petitioner's sentence calculation and explains how it supports a full-term date of April 2005. *Id.* ¶¶ 3-4. Simply put, the petitioner's clam fails because the numbers as he presents them do not add up. On April 19, 1999, the Commission revoked the petitioner's parole. The petitioner does not dispute that he was reincarcerated with 2,381 days remaining on his sentence (approximately six and one-half

years).  *See* Gov't. Opp'n at 9; Gov't. Opp'n, Ex. M at ¶¶ 2-3; Pet. at 13.  Six and one-half years

after April 1999 is October 2005.  Clearly, this defeats the petitioner's argument for the setting of

a full-term date in 2004.

The petitioner seeks to benefit from the Commission's mistake apparently by applying

principles of equitable estoppel.  The traditional elements of equitable estoppel include "one

person mak[ing] a definite misrepresentation of fact to another person" and that other person

reasonably relying on the misrepresentation to his detriment.  *Smith v. U.S.*,  277 F. Supp. 2d 100,

115 (D.D.C. 2003) (quoting *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984)).  The

petitioner has not shown, and cannot show, that he reasonably relied on the mistaken portion to

his detriment where the correct full-term date of April 5, 2005, appears prominently on the

certificate.  *See* Govt. Opp'n, Ex. L.  At the least, the discrepancy would have placed a

reasonable person on notice to inquire about the calculation.  The petitioner therefore cannot

credibly assert that he "did not know nor should [] have known that [the respondent's] conduct

was misleading."  *Smith v. U.S.*,  277 F. Supp. 2d at 107 (internal citation and quotation marks

omitted).  Moreover, where, as here, estoppel would apply against the government, it must be

shown in addition to the traditional elements that the "government agents engage[d] – by

commission or omission – in conduct that can be characterized as misrepresentation or

concealment, or at least, behave in ways that have or will cause an egregiously unfair result."  *Id*.

(internal citation and quotation marks omitted).  The undisputed fact of clerical error belies such

a determination and nothing in the record supports a conclusion that the error caused an

egregiously unfair result.

The petitioner also claims that the Commission has miscalculated his sentence by failing to apply the good-time credits he earned before his November 2002 parole to his current full-term date.  Pet. at 13; Pet'r's Reply at 30.  District of Columbia law provides that

> [i]f the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody.  *For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence*

D.C. Code § 24-406(a) (emphasis added).  Good-time credits are applied to the minimum term of the sentence being served to reduce the time of eligibility for release to parole and to the maximum term to determine the mandatory parole release date.  D.C. Code § 24-221.01a (b). They do not carry over into a new sentence.  *See Teachey v. Carber*, 736 A.2d 998, 1006, n.12 (D.C. 1999); *cf.* 28 C.F.R. § 2.35(b) ("once . . .  [a federal] offender is conditionally released  . . . the good time earned during that period of imprisonment is of no further effect  . . .  [to shorten his supervision or remaining sentence]").

It is unclear from the petitioner's reply if he is also seeking the restoration of his  street-time credit earned while he was on parole.  *See* Pet'r's Reply at 20-32.  It is settled, however, that District of Columbia prisoners have neither a constitutional nor a statutory right to the restoration of street-time credit once their parole is revoked.  *See Jones v. Bureau of Prisons,* 2002 WL 31189792, *1 (D.C. Cir. 2002) (denying certificate of appealability) (citing *Davis v. Moore*, 772 A.2d 204, 214-15 (D.C. 2001); *United States Parole Commission v. Noble*, 693 A.2d 1084, 1085 (D.C. 1997), *aff'd on reh'g*, 711 A.2d 85 (1998) (en banc)).  To the contrary, District of Columbia law requires the rescission of street-time credit under such circumstances.  D.C.

Code § 24-406(a); *see Noble*, 693 A.2d at 1094-1104 (interpreting § 24-206(a) on certification of question from the District of Columbia Circuit).

## IV.   CONCLUSION

For the reasons stated above, the court denies the petition for a *writ of habeas corpus*.   An order consistent with this memorandum opinion is separately and contemporaneously issued this 30th day of November 2005.

RICARDO M. URBINA
United States District Judge

9